# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **THE STATE OF NEW HAMPSHIRE, DEPARTMENT OF ENVIRONMENTAL SERVICES,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 1:22-cv-00223** |
| **GEORGIA-PACIFIC CONSUMER PRODUCTS LP AND FORT JAMES, LLC,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |
| _____ | ) | |

## CONSENT DECREE

**TABLE OF CONTENTS**

**Page**

I.      BACKGROUND ...................................................................................................3

II.     JURISDICTION ..................................................................................................5

III.    PARTIES BOUND ..............................................................................................5

IV.     DEFINITIONS.....................................................................................................5

V.      OBJECTIVES ......................................................................................................7

VI.     COMMITMENTS BY SDs .................................................................................7

VII.    SETTLEMENT AND PAYMENT OF STATE PAST RESPONSE COSTS ....7

VIII.   COVENANTS BY SDs .......................................................................................9

IX.     EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION ...................9

X.      NOTICES AND SUBMISSIONS .....................................................................10

XI.     EFFECTIVE DATE............................................................................................11

XII.    RETENTION OF JURISDICTION....................................................................11

XIII.   APPENDICES ...................................................................................................11

XIV.    MODIFICATION ...............................................................................................11

XV.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ....................12

XVI.    SIGNATORIES/SERVICE................................................................................12

XVII.   FINAL JUDGMENT .........................................................................................12

# I.    BACKGROUND

A.    WHEREAS, the State of New Hampshire Department of Environmental Services ("NHDES"), by and through the Office of the Attorney General (collectively, the "State") has filed a Complaint pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a) and New Hampshire Revised Statutes Annotated ch. 147-A and 147-B in the United States District Court for the District of New Hampshire against Settling Defendants claiming Settling Defendants are jointly and severally liable to the State of New Hampshire for the State's Past Response Costs incurred in connection with the Chlor-Alkali Facility (Former) Superfund Site in Berlin, New Hampshire ("Complaint").

B.    WHEREAS, the Chlor-Alkali Facility (Former) Superfund Site ("Site") is located in the City of Berlin, Coos County, New Hampshire, on the eastern bank of the Androscoggin River ("Androscoggin River" or the "River").  The main part of the Site, which is referred to as the Cell House Property (or parcel) ("CHP"), is a landfill that contains debris and remnants of a former chlor-alkali facility/chemical plant that operated primarily in that same location.  The entire Site includes the CHP and former chemical plant, all areas within the Androscoggin River with Site-related contaminants, its impoundments and floodplains, as well as any other location where hazardous substances from the contamination from the former chlor-alkali facility/chemical plant have come to be located.

C.    WHEREAS, the former chemical plant was built during the late 1890s and operated through much of the 20th century by the Brown Company.  Electrolytic cells were installed in cell houses to produce chlorine and sodium hydroxide for pulp and paper manufacturing.  The chemical plant also produced other chemicals including chloroform, carbon tetrachloride, carbon disulfide, and calcium arsenate.  The chemical plant, rail yard, and other structures were gradually dismantled over a number of years with demolition debris often consolidated into former building structures and left on Site.  The CHP landfill was closed in 1999 with the installation of a low-permeability cap covered by two feet of wood chips.  A slurry wall was added to control groundwater migration into the capped landfill area.

D.    WHEREAS, the Defendants that have entered into this Consent Decree ("CD") ("Settling Defendants" or "SDs") are successors to the former owner/operators at the Site or have assumed the liabilities of one or more of the former owners/operators.

E.    WHEREAS, in 1999, mercury was discovered to be discharging into the River through bedrock fractures in the riverbank, adjacent to the CHP.  The NHDES completed several removals of mercury and mercury contaminated debris from the River, at times, together with the then current owners of the former chemical plant and surrounding pulp and paper mill property, or independently upon property abandonment pursuant to certain orders entered in a former owner's Chapter 11 bankruptcy proceeding.

F.    WHEREAS, at the request of the NHDES, the Site was proposed for listing to the National Priorities List ("NPL") on April 27, 2005.  Pursuant to Section 105 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9605, EPA placed the Site on the NPL, set forth at 40 C.F.R. Part 300, by publication in the Federal Register on September 14, 2005, 70 Fed. Reg. 54286.

G.      WHEREAS, in response to a release or a substantial threat of a release of hazardous substances at or from the Site, EPA conducted a Remedial Investigation ("RI") for the Site completed on or about March 1, 2014.  Settling Defendants conducted a Supplemental Remedial Investigation ("SRI") completed on or about October 19, 2018; and Settling Defendants completed Feasibility Study ("FS") for the Site on April 7, 2020, in accordance with 40 C.F.R. § 300.430.

H.      WHEREAS, in accordance with Section 117 of CERCLA and 40 C.F.R. § 300.430(f), EPA published notice of the completion of the Feasibility Study and of the proposed plan for remedial action on May 28, 2020, in a major local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of the public meeting and comments received are available to the public as part of the administrative record upon which the Director, Superfund and Emergency Management Division, EPA Region 1, based the selection of the response action.

I.      WHEREAS, EPA selected a remedial action to be implemented at the Site, which is embodied in a final Record of Decision ("ROD"), executed on September 23, 2020, on which the State had a reasonable opportunity to review and comment/on which the State has given its concurrence.  The Record of Decision includes a summary of responses to the public comments.  Notice of the final plan was published in accordance with section 117(b) of CERCLA.

J.      WHEREAS, after EPA identified Settling Defendants as potentially responsible parties ("PRPs") for the Site, the State submitted cost-recovery demand letters pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), as well as New Hampshire Revised Statutes Annotated ch. 147-A and 147-B, along with supporting documentation (see Appendices A-B).

K.      WHEREAS, Settling Defendants do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in their demand letters or the State's Complaint filed contemporaneously with this Consent Decree, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

L.      The Parties recognize, and the Court by entering this CD finds, that this CD has been negotiated by the Parties in good faith and implementation of this CD will expedite payment to the State for past response costs incurred at the Site and will avoid prolonged and complicated litigation between the Parties related to Past Response Costs, and that this CD is fair, reasonable, and in the public interest.

M.      The Parties further recognize that this CD does not foreclose the State from instituting actions against SDs pursuant to CERCLA §107(a), 42 U.S.C. § 9607(a), or New Hampshire Revised Statutes Annotated ch. 147-A or 147-B, for remedial action at the Site and determinations of liability with respect to the Site and for any response costs incurred by the State in the future not settled and resolved hereby.  In any such actions, SDs reserve fully all defenses, rights, and claims.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and 42 U.S.C. §§ 9607 and 9613(b) and pendent jurisdiction over the New Hampshire state law claims arising under N.H. Rev. Stat. Ann. §§ 147-A and 147-B.  This Court also has personal jurisdiction over SDs.  Solely for the purposes of this CD and the underlying Complaint, SDs waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  SDs shall not challenge the terms of this CD or this Court's jurisdiction to enter and enforce this CD.  The Complaint states claims against SDs upon which relief may be granted.

## III.    PARTIES BOUND

2.    This CD is binding upon the State and upon SDs and their successors and assigns.  Any change in ownership or corporate or other legal status of a SD including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such SD's responsibilities under this CD.

## IV.    DEFINITIONS

3.    Subject to the next sentence, terms used in this Decree that are defined in CERCLA or the New Hampshire Hazardous Waste Cleanup Fund statute ("HWCF"), or the regulations promulgated under CERCLA and the HWCF, have the meanings assigned to them in CERCLA and the HWCF, and the regulations promulgated under CERCLA and the HWCF.  Whenever the terms set forth below are used in this CD, or in the appendices attached hereto and incorporated hereunder, the following definitions apply:

"Affected Property" shall mean all real property at the Site and any other real property where EPA determines, at any time, that access, land, water, or other resource use restrictions, and/or Institutional Controls are needed to implement the Remedial Action, including, but not limited to, (1) the Cell House Property (or "CHP"), which is approximately 4.6 acres, situated on the east bank of the Androscoggin River just downstream of the Sawmill Dam, and is identified on Berlin Tax Assessor's Map No. 128 as Lot No. 262; and (2) approximately 38 acres of undeveloped and former industrial property, which is an undivided portion of a larger parcel that is identified on Berlin Tax Assessor's Map No. 129 as a portion of Lot No. 54.

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. §§ 9601-9675.

"Consent Decree," "Decree," or "CD" means this consent decree and all appendices attached hereto.  If there is a conflict between a provision in Sections I-XVI and a provision in any appendix, the provision in Sections I-XVI controls.

"Day" or "day" means a calendar day. In computing any period under this Decree, the day of the event that triggers the period is not counted and, where the last day is not a working day, the period runs until the close of business of the next working day. "Working day" means any day other than a Saturday, Sunday, or federal or State holiday.

"Effective Date" means the date upon which the Court's approval of this Decree is entered as an order of the Court.

"EPA" means the United States Environmental Protection Agency.

"HWCF" shall mean the New Hampshire Hazardous Waste Cleanup Fund statute, N.H. Rev. Stat. Ann. § 147-B.

"Interest" shall mean the 10% annual rate of interest provided in N.H. Rev. Stat. Ann. 336:1.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the State of New Hampshire in connection with the Site between December 31, 2021 and the effective date of this Consent Decree, or (b) incurred prior to the effective date of this Consent Decree but paid after that date.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"NHDES" shall mean the New Hampshire Department of Environmental Services and any successor departments or agency of the State.

"Paragraph" or "¶" shall mean a portion of this CD identified by an Arabic numeral or an upper case or lower case letter.

"Parties" shall mean the State of New Hampshire and the SDs.

"Past Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the State paid in connection with the Site through December 31, 2021, plus all interest on such costs accrued under Section 107(a) of CERCLA, N.H. Rev. Stat. Ann. § 147-A, or the HWCF through such date.

"Plaintiff" shall mean the State of New Hampshire Department of Environmental Services, by and through the New Hampshire Office of the Attorney General (collectively, the "State").

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Section" shall mean a portion of this CD identified by a Roman numeral.

"Settling Defendants" or "SDs" shall mean Georgia-Pacific Consumer Products LP and Fort James LLC.

"Site" shall mean the Chlor-Alkali Facility (Former) Superfund Site, encompassing approximately 44 acres, located on the east bank of the Androscoggin River, in the City of Berlin, Coos County, New Hampshire, and depicted generally on the map attached as Appendix C.

"State" shall mean the State of New Hampshire.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Waste Materials" shall mean (1) any "hazardous substances" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); (4) any "hazardous waste" or "hazardous materials" under New Hampshire Revised Statutes Annotated 147-B:2, VII or VIII; and (5) any "hazardous waste" under New Hampshire Revised Statutes Annotated 147-A:2, VII.

## V.     OBJECTIVES

4.      The objectives of the Parties in entering into this CD are for SDs to reimburse and settle the claims of Plaintiff, the State of New Hampshire, for Past Response Costs of Plaintiff as provided in this CD.

## VI.     COMMITMENTS BY SDs

5.      **Commitments by SDs**

        a.      SDs shall pay the State for its past response costs as provided in this CD.

        b.      SDs' obligations to finance the State's past response costs, including obligations to pay amounts due under this CD, are joint and several.  In the event of the insolvency of any SD or the failure by any SD to implement any requirement of this CD, the remaining SDs shall complete all such requirements.

## VII.     SETTLEMENT AND PAYMENT OF STATE PAST RESPONSE COSTS

6.      **Settlement of State's Claim for Past Response Costs.**  In full and final settlement, release, satisfaction, and resolution of the State's claims that were or could have been brought herein against SDs (including predecessors, affiliates, shareholders, officers, and directors of each SD, and their successors and assigns) for Past Response Costs pursuant to CERCLA, RCRA, N.H.

Rev. Stat. Ann. 147-A, and the HWCF, the State Constitution, other State law, and common law, SDs shall pay the State its Past Response Costs as set forth in the following paragraph.

7.      **Payment by SDs for State Past Response Costs.**   Within 60 days after the Effective Date, SDs shall pay to the State $561,921.69 (Five Hundred Sixty-One Thousand Nine Hundred and Twenty-One Dollars and Sixty-Nine Cents) by official bank check(s) made payable to "Treasurer, State of New Hampshire," as full and final settlement payment of State Past Response Costs.  SDs shall send the bank check(s) to:

> Joshua C. Harrison
> Assistant Attorney General
> Environmental Protection Bureau
> N.H. Department of Justice
> 33 Capitol Street
> Concord, New Hampshire 03301-6397
> Joshua.C.Harrison@doj.nh.gov

8.      **Interest.**   In the event that any payment for Past Response Costs required under this Section is not made by the date required, SDs shall pay Interest on the unpaid balance.  The Interest on Past Response Costs shall begin to accrue on the date such payment was due.  The Interest shall accrue through the date of SDs' payment.

9.      Except as specifically provided in this CD, nothing in this CD shall limit the power and authority of the State to direct, or order all actions necessary to protect public health, welfare, or the environment or to prevent, abate, or minimize an actual or threatened release of hazardous substances, pollutants, or contaminants, or hazardous or solid waste, on, at, or from the Site.  Further, nothing in this CD shall prevent the State from seeking legal or equitable relief to enforce the terms of this CD, from taking other legal or equitable action as it deems appropriate and necessary for claims not settled by this CD, or from requiring SDs in the future to perform additional activities pursuant to any applicable law.  Additionally, nothing in this CD shall prevent or prohibit the State from engaging in any negotiations or actions with the United States and/or SDs regarding remedial work at the Site and future response costs.  SDs reserve fully all defenses, rights, and claims in the event of any subsequent State claims.

10.     **General Reservations of Rights.**   The Plaintiff reserves, and this CD is without prejudice to, all rights against SDs with respect to all matters not expressly settled and included within this CD.  Notwithstanding any other provision of this CD, the Plaintiff reserves all rights against SDs with respect to:

> a.      Liability for all future response costs to be incurred in connection with the Site not settled in this CD and any claims for declaratory judgments as to liability for the Site;

> b.      Liability for failure by SDs to meet a requirement of this CD;

     c.      Liability arising from the past, present, or future disposal, release, or threat of release by SDs of Waste Material outside of the Site;

     d.      Liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

     e.      Criminal liability.

## VIII.   COVENANTS BY SDs

11.   **Covenants by Settling Defendants.**

     a.      Settling Defendants covenant not to sue and shall not assert any claim or cause of action against the Plaintiff under CERCLA, Section 7002(a) of RCRA, the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the State Constitution, State law, or at common law regarding the State's Past Response Costs.

     b.      Settling Defendants covenant not to seek reimbursement from the Fund through CERCLA or any other law for State Past Response Costs.

12.   **Settling Defendants' Reservation.**  The covenants in ¶ 11 do not apply to any claim or cause of action brought, or order issued, after the Effective Date by the State to the extent such claim, cause of action, or order is within the scope of a reservation.

## IX.   EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

13.   The Parties agree and the Court finds that: (a) the claims of the State of New Hampshire in this action constitute a civil action within the meaning of Section 113(f)(1) of CERCLA; (b) this Decree constitutes a judicially approved settlement under which each of the Settling Defendants has, as of the Effective Date, resolved its liability to the State as relates to State Past Response Costs, as defined herein; and (c) each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed." The "matters addressed" in this Decree are all past response costs incurred, at or in connection with the Site, by the State.

14.   Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Decree, notify the State no later than 60 days prior to the initiation of such suit or claim. Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Decree, notify the State within 10 days after service of the complaint on such Settling Defendant. In addition, each Settling Defendant shall notify the State within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

15.   **Res Judicata and Other Defenses.**  In any subsequent administrative or judicial proceeding initiated against any Settling Defendant by Plaintiff for injunctive relief, recovery of

response costs or liability for future response costs, or other appropriate relief relating to the Site, and not settled hereby, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the State in the subsequent proceeding were or should have been brought in the instant case.

16.     Nothing in this Decree diminishes the right of the State to pursue any person not a party to this Decree to obtain additional response costs or to undertake response actions and to enter into settlements that give rise to contribution protection.

## X.     NOTICES AND SUBMISSIONS

17.     All approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, and requests specified in this CD must be in writing unless otherwise specified.  Whenever, under this CD, notice is required to be given, by one Party to another, it must be directed to the person(s) specified below at the address(es) specified below.  Any Party may change the person and/or address applicable to it by providing notice of such change to all Parties.  All notices under this Section are effective upon receipt, unless otherwise specified. Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the CD regarding such Party.

**As to the State:**          Andrew Hoffman
                              State Project Coordinator
                              New Hampshire Department of Environmental Services
                              P.O. Box 95
                              29 Hazen Drive
                              Concord, New Hampshire 03302-0095
                              Andrew.J.Hoffman@des.nh.gov

                              Joshua C. Harrison
                              Assistant Attorney General
                              Environmental Protection Bureau
                              New Hampshire Department of Justice
                              33 Capitol Street
                              Concord, New Hampshire 03301-6397
                              Joshua.C.Harrison@doj.nh.gov

**As to SDs:**                General Counsel
                              Georgia-Pacific LLC
                              133 Peachtree Street, N.E.
                              Atlanta, Georgia 30348-5605

Charles M. Denton
3475 Piedmont Road N.E.
Suite 1700
Atlanta, Georgia 30305-3327
charles.denton@btlaw.com

## XI.    EFFECTIVE DATE

18.    The effective date of this Consent Decree shall be the date that this Consent Decree is entered by the U.S. District Court for the District of New Hampshire as an order of the Court.

## XII.    RETENTION OF JURISDICTION

19.    This Court retains jurisdiction over both the subject matter of this CD and SDs for the duration of the performance of the terms and provisions of this CD for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this CD, or to effectuate or enforce compliance with its terms.

## XIII.    APPENDICES

20.    The following appendices are attached and incorporated into this CD:

"Appendix A" is the May 20, 2021 Demand Letter containing the State of New Hampshire's Claims against Fort James LLC and Georgia-Pacific Consumer Products LP and the subsequent July 29, 2021 Demand Letter containing the State of New Hampshire's specific demand for reimbursement of $561,921.69.

"Appendix B" is the summary of past response costs provided by the State of New Hampshire.

"Appendix C" is the description and/or map of the Site.

## XIV.    MODIFICATION

21.    Modifications to this CD shall be in writing, signed by the State of New Hampshire and SDs, and shall be effective upon approval by the Court.  Non-material modifications to this CD shall be in writing and shall be effective when signed by duly authorized representatives of the State and SDs.

22.    Nothing in this CD shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this CD.

## XV.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

23.    Pursuant to CERCLA, and with respect to the State's CERCLA claims, this Consent Decree shall be lodged with the Court for a period of at least 30 days for public notice and comment.  The State reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate this Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants consent to the entry of this Consent Decree without further notice.

24.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVI.   SIGNATORIES/SERVICE

25.    Each undersigned representative of a SD to this CD and the Assistant Attorney General for the State of New Hampshire certifies that he or she is fully authorized to enter into the terms and conditions of this CD and to execute and legally bind such Party to this document.

26.    Each SD agrees not to oppose entry of this CD by this Court or to challenge any provision of this CD unless the State has notified SDs in writing that it no longer supports entry of the CD.

27.    Each SD shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this CD.  SDs agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

## XVII.  FINAL JUDGMENT

28.    This CD and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the CD.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement of State Past Response Costs other than those expressly contained in this CD.

29.    Upon entry of this CD by the Court, this CD shall constitute a final judgment between the State and SDs.  The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS __15__ DAY OF __August__, 2022.

_SD Elliott_

_____
United States District Judge

Signature Page for CD regarding the Chlor-Alkali Facility (Former) Superfund Site

**FOR THE STATE OF NEW HAMPSHIRE**

**STATE OF NEW HAMPSHIRE OFFICE OF THE ATTORNEY GENERAL**

6/21/2022
_____
Dated

_____
Joshua C. Harrison, Bar #269564
Assistant Attorney General
Environmental Protection Bureau
Office of the Attorney General
New Hampshire Department of Justice
33 Capitol Street
Concord, New Hampshire 03301-6397
Joshua.C.Harrison@doj.nh.gov
(603) 271-3679

Signature Page for CD regarding the Chlor-Alkali Facility (Former) Superfund Site

**FOR GEORGIA-PACIFIC CONSUMER PRODUCTS, LP**

6/13/22
Dated

*Bryant T Champion*
Name (print): Bryant T Champion
Title: SVP Environmental Affairs + Product Safety
Address: 133 Peachtree St NE
Atlanta GA 30303

**FOR FORT JAMES, LLC**

6/13/22
Dated

*Bryant T Champion*
Name (print): Bryant T Champion
Title: SVP Environmental Affairs + Product Safety
Address: 133 Peachtree St NE
Atlanta GA 30303

Agent Authorized to Accept Service
on Behalf of Above-Signed Parties:

Charles M. Denton
BARNES & THORNBURG LLP
3475 Piedmont Road N.E.
Suite 1700
Atlanta, GA 30305-3327
(616) 742-3974
Charles.Denton@btlaw.com

14

**APPENDIX A**

**May 20, 2021 Letter Containing the State of New Hampshire's Claims
against Fort James LLC and Georgia-Pacific Consumer Products LP**



# ATTORNEY GENERAL
# DEPARTMENT OF JUSTICE

33 CAPITOL STREET
CONCORD, NEW HAMPSHIRE 03301-6397

JOHN M. FORMELLA
ATTORNEY GENERAL

JANE E. YOUNG
DEPUTY ATTORNEY GENERAL

May 20, 2021

Attn:   J. Michael Davis, Esq., Assistant General Counsel, Georgia-Pacific LLC

David A. Duncan
Executive Vice President
Georgia-Pacific Consumer Products LP
133 Peachtree Street, N.E.
Atlanta, GA  30303-5605

**Re:    State of New Hampshire's Claims against and Georgia-Pacific Consumer
Products LP and Fort James LLC relating to the Chlor-Alkali Facility
(Former) Superfund Site in Berlin, New Hampshire**

Dear Mr. Duncan:

The State of New Hampshire Department of Environmental Services, ("NHDES" or
"Department"), by and through its counsel, the New Hampshire Office of the Attorney General
(collectively, the "State") hereby provides notice of its claims against Georgia-Pacific Consumer
Products LP and Fort James LLC as potentially responsible parties in connection with the Chlor-
Alkali Facility (Former) Superfund Site ("Site") in Berlin, New Hampshire.  Pursuant to Section
107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act
("CERCLA"), 42 U.S.C. §9607(a), as well as New Hampshire Revised Statutes Annotated,
Chapters 147-A and 147-B, the State seeks cleanup of the Site as well as recovery of all costs
incurred by the State in responding to the releases at the Site.  The State is contacting you to join
in the Environmental Protection Agency's ("EPA") Special Notice letter, its claims, and in its
formal invitation to settle Georgia-Pacific Consumer Products LP's responsibility at the Site.

The State intends to join any potential forthcoming negotiations as an additional party
and pursue settlement of its claims in conjunction with EPA and the United States Department of
Justice.  In the event that settlement of the State's claims is not achieved, the State reserves the
right to bring civil action pursuant to CERCLA, N.H. RSA 147-A, RSA 147-B, and any other
applicable law.

Letter to David A. Duncan
May 20, 2021
Page 2

Similar to the EPA, the State, by this letter, makes a demand for reimbursement of its past costs related to the Site and invites you to negotiate a consent decree in which you and other potentially responsible parties agree to perform the Remedial Design/Remedial Action activities consistent with EPA's March 30, 2021 letter and its September 2020 Record of Decision.

To date, the State has incurred response costs related to the Site. These costs relate to but are not limited to the following past Site activities: site discovery and associated investigations and monitoring; oversight of slurry wall and landfill design, construction, and maintenance, and the recovery of elemental mercury and mercury-containing debris from the Androscoggin River. The State seeks to recover from Georgia-Pacific Consumer Products LP and Fort James LLC its response costs and all interest authorized to be recovered under Section 107(a) of CERCLA and N.H. RSA 147-A and N.H. RSA 147-B.

New Hampshire's public records related to this Site may be made available to you by request to the New Hampshire Department of Environmental Services or to undersigned counsel for the Department. Please feel free to contact me at any time with questions or concerns. We look forward to future discussions.

Sincerely,

Joshua C. Harrison
Assistant Attorney General
Environmental Protection Bureau
(603) 271-3679
Joshua.C.Harrison@doj.nh.gov

ec:

Michael Wimsatt, Director, NHDES Waste Management Division
Robin Mongeon, NHDES Waste Management Division;
Andrew Hoffman, NHDES Waste Management Division;
Robert Scott, Commissioner, NHDES, Natural Resource Trustee;
Sarah Stewart, Commissioner, N.H. Department of Natural and Cultural Resources, Natural Resource Trustee;
Scott Mason, Executive Director, N.H. Fish and Game Department, Natural Resource Trustee;
Darryl Luce, Remedial Project Manager, USEPA;
Mark A. Gallagher, Senior Attorney, USDOJ;
Ronald A. Gonzalez, Senior Enforcement Counsel, USEPA;
RuthAnn Sherman, Senior Enforcement Counsel, USEPA;
Andrew Raddant, U.S. Department of the Interior;
Kenneth Finkelstein, National Oceanic and Atmospheric Administration;
Molly Sperduto, U.S. Fish and Wildlife Service.

**APPENDIX B**

**State of New Hampshire Past Response Cost**
**Summary Report**

**Annotated Contractor Costs Summary**

| | Inv. # | Date | Contractor | DES site # | Site name | Org code charged | Amount | Invoice included in accounting report? | Note |
|---|---|---|---|---|---|---|---|---|---|
| | Chlor-Alkali Superfund Site, Berlin NH | | | | | | | | |
| | Historic paper file invoice summary | | | | | | | | |
| 4 | 4-2450-00056 | 20-Jul-04 | DOI-USGS | | Former Chloro-alkyl facility | 5392 | $ 56,605.43 | yes | |
| 5 | NH0113515 | 27-Nov-01 | Clean Harobors | not listed on inv | Pulp & Paper of America | 5392 | $ 1,045.10 | | Mercury cleanup on the river bank noted on invoice |
| 6 | B2802 | 26-Dec-02 | BG Environmental | 19970904601 | Former Cell House Site | 5392 | $ 19,773.50 | no | Mercury cleanup on the river bank noted on invoice |
| 7 | 4-2450-00018 | 19-Nov-03 | DOI-USGS | | Former Cell House Site | 5392 | $ 119,490.00 | yes | |
| 8 | FEB2005-00261 | 17-Feb-05 | Weston Solutions | 19970904061 | Former Chloro-Alkyl facility | 2570 | $ 104.00 | yes | Data validation |
| 9 | FEB2005-00260 | 17-Feb-05 | Weston Solutions | 19970904601 | Former Chloro-Alkyl Facility | 5392 | $ 448.00 | yes | Drilling program |
| 10 | JUN2003-00297 | 3-Jun-03 | Weston Solutions | 19970904601 | Cell House Site Investigation | 5392 | $ 1,260.95 | yes | USGS oversight |
| 11 | MAR2003-00275 | 28-Feb-03 | Weston Solutions | 19970904601 | Cell House Site Investigation | 5392 | $ 1,159.06 | yes | USGS oversight |
| 12 | FEB2003-01833 | 3-Feb-03 | Weston Solutions | 19970904601 | Cell House Site Investigation | 5392 | $ 1,125.64 | yes | |
| 13 | JAN2003-02265 | 10-Jan-03 | Weston Solutions | 19970904601 | Cell House Site Investigation | 5392 | $ 2,340.88 | yes | |
| 14 | DEC2002-00274 | 9-Dec-02 | Weston Solutions | 1997090402 | Hg/sediment analytical svcs | 5392 | $ 4,848.36 | no | |
| 15 | DEC2002-02110 | 9-Dec-02 | Weston Solutions | 19970904601 | Cell House Site Investigation | 5392 | $ 5,967.78 | yes | total matches combined series of payments on accounting report |
| 16 | NOV2002-02370 | 11-Nov-02 | Weston Solutions | 19970904601 | Cell House Site Investigation | 5392 | $ 26,651.14 | yes | |
| 17 | MAY2004-00281 | 26-Apr-04 | Weston Solutions | 19970904601 | Former Chlor-Alkyl facility | 2570 | $ 411.00 | yes | |
| 18 | MAR2004-00279 | 4-Mar-04 | Weston Solutions | 19970904601 | Former Cell House Site | 5392 | $ 40.00 | yes | |
| 19 | FEB2004-02141 | 4-Feb-04 | Weston Solutions | 19970904601 | Former Cell House Site | 5392 | $ 64.00 | yes | |
| 20 | FEB2004-02142 | 3-Feb-04 | Weston Solutions | 19970904601 | Former Cell House Site | 5392 | $ 6,406.40 | yes | |
| 21 | JAN2004-02499 | 9-Jan-04 | Weston Solutions | 19970904601 | Former Cell House Site | 5392 | $ 16,146.62 | yes | |
| 22 | DEC2003-02444 | 19-Dec-03 | Weston Solutions | 19970904601 | Former Cell House Site | 5392 | $ 4,652.00 | yes | |
| 23 | DEC2003-02668 | 9-Dec-03 | Weston Solutions | 19970904601 | Former Cell House Site | 5392 | $ 488.00 | yes | |
| 24 | JUL2003-02457 | 11-Jul-03 | Weston Solutions | 19970904601 | Cell House Site Investigation | 5392 | $ 8,063.96 | no | |
| 25 | JUL2004-00330 | 28-Jun-04 | Weston Solutions | 19970904601 | Former Chloro-alkyl Facility | 5392 | $ 5,869.84 | yes | |
| 26 | JUN2004-02466 | 2-Jun-04 | Weston Solutions | 19970904601 | Former Chloro-alkyl Facility | 5392 | $ 17,568.63 | yes | total matches combined series of payments on accounting report |
| 27 | MAY2004-02516 | 5-May-04 | Weston Solutions | 19970904601 | Former Chloro-alkyl Facility | 5392 | $ 159.12 | yes | |
| 28 | APR2004-02244 | 7-Apr-04 | Weston Solutions | 19970904601 | Former Cell House Site | 5392 | $ 138,673.42 | yes | Monitoring well installation |
| 29 | APR2004-01742 | 29-Mar-04 | Weston Solutions | 19970904601 | Former Cell House Site | 5392 | $ 1,064.00 | yes | site survey |
| 30 | MAR2004-00278 | 4-Mar-04 | Weston Solutions | 19970904601 | Former Cell House Site | 5392 | $ 64.00 | yes | |
| 31 | MAR2004-02207 | 4-Mar-04 | Weston Solutions | 19970904601 | Former Cell House Site | 5392 | $ 22,710.49 | yes | Drilling program |
| 32 | APR2004-02254 | 7-Apr-04 | Weston Solutions | 19970904601 | Former Cell House Site | 2570 | $ 6,301.08 | yes | Additional soil sampling |
| 33 | SEP2004-02569 | 2-Sep-04 | Weston Solutions | 19970904601 | Former Chloro-alkyl facility | 5392 | $ 1,711.20 | yes | Mercury cleanup |
| 34 | SEP2004-00303 | 2-Sep-04 | Weston Solutions | 19970904601 | Former Chloro-alkyl facility | 5392 | $ 1,057.20 | yes | subsurface investigation |
| 35 | OCT2004-00300 | 6-Oct-04 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 1,405.98 | yes | site investigation |
| 36 | OCT2004-00301 | 6-Oct-04 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 5,398.00 | yes | site investigation |
| 37 | OCT2004-03085 | 6-Oct-04 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 19,749.04 | yes | 2004 mercury removal |
| 38 | NOV2004-02958 | 9-Nov-04 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 17,367.90 | yes | site investigation |
| 39 | NOV2004-00362 | 9-Nov-04 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 2570 | $ 80.00 | yes | Data validation |
| 40 | DEC2004-02823 | 6-Dec-04 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 5,187.00 | yes | Drilling program |
| 41 | JAN200500267 | 11-Jan-05 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 2570 | $ 2,937.00 | yes | Data validation |
| 42 | DEC2004-00308 | 6-Dec-04 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 2570 | $ 292.40 | yes | Data validation |
| 43 | JAN2005-00266 | 11-Jan-05 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 3,304.66 | yes | Drilling program |
| 44 | 5-2450-00006 | 22-Nov-04 | DOI-USGS | | Former Chlor-Alkali Facility | 5392 | $ 3,394.55 | yes | site investigation |
| 45 | MAR2005-03495 | 9-Mar-05 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 1,517.00 | yes | Drilling program |
| 46 | MAY2004-02548 | 5-May-04 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 15,170.60 | yes | site investigation |
| 47 | OCT2005-04057 | 25-Oct-05 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 18,826.70 | no | 2005 Mercury removal |
| 48 | JAN2006-01780 | 3-Jan-06 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 64.00 | no | 2005 Mercury removal |
| 49 | JAN2006-02856 | 12-Jan-06 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 346.50 | no | 2005 Mercury removal |
| 50 | FEB2006-01735 | 10-Feb-06 | Weston Solutions | 19970904601 | Former Chlor-Alkali Facility | 5392 | $ 238.40 | no | 2005 Mercury removal |
| 51 | Invoices approved for payment in paper file not reported in accounting report = $53,206.52 | | | | | TOTAL | $ 567,550.53 | | all invoices paid |
| 52 | Invoice charged to federal grant (2570) to be subtracted from state costs. | | | | | | $ 10,125.48 | | subtract ivoices charged to federal grant (2570) |
| 53 | | | | | | | $ 4,496.24 | | add personnel & travel totals incurred by the state hazardous waste cleanup fund (5392) from accounting report |
| 54 | | | | | | GRAND TOTAL OF COSTS INCURRED BY STATE | $ 561,921.29 | | |

**NH 00456**

**APPENDIX C**

**Map of the Chlor-Alkali Facility (Former) Superfund Site**

**Figure 1**: Location of Berlin, New Hampshire and the Chlor-Alkali Facility (Former) Superfund Site. **Source**: USGS 7.5 Minute Topographic Quadrangle obtained from NH GRANIT on-line GIS database, dated 1970, revised 1989.

